IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Robert A. Hutchens,

    Plaintiff,

v.

Weltman, Weinberg & Reis Co., LPA,

    Defendant.

Case No. 1:03cv252

District Judge Michael H. Watson

## OPINION AND ORDER

Before the Court is the May 27, 2004 Motion of Defendant, Weltman, Weinberg & Reis Co. LPA (hereinafter "WW&R") for Summary Judgement (Doc. 19). Plaintiff Robert A. Hutchens (hereinafter "Plaintiff") filed a Memorandum in Opposition on June 18, 2004 (Doc. 21). Defendant filed a Reply Memorandum on June 29, 2004 (Doc. 22).

This matter is now ripe for review. For the reasons stated herein, the May 27, 2004 Motion of Defendant for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTS

Mr. Hutchens was born on April 14, 1951 and, at all relevant times, was over forty years of age. (Doc. 33, ¶ 9) WW&R is a law firm specializing in creditor's rights. (Depo. of Frank Veneziano, p. 5) Frank Veneziano is the partner in charge of the Cincinnati office of WW&R. (*Id*.; Depo. Plaintiff, p. 58)

In December, 2000, Plaintiff and Mr. Veneziano spoke about Plaintiff joining the Cincinnati office WW&R. (Veneziano Depo., p. 24) Mr. Veneziano checked Plaintiff's

references and every one of them was "sparkling." (*Id.*) On December 29, 2000, Mr. Veneziano faxed Plaintiff an offer of employment which states, in relevant part:

> I am extending an offer to you at a starting salary of $90,000.00 and $5,000.00 toward your relocation expenses. The $5,000.00 will be paid to you at the completion of your first week here in the Cincinnati office (January 12th). Additionally, the firm agrees that as long as you are still in our employ and performing at an acceptable level on July 1, 2001, you will be given a $5,000.00 raise and an additional $5,000.00 towards your relocation expenses.
>
> Per our discussion, our firm and yourself agree that as long as you remain in our employ through December 31, 2002, none of the $10,000.00 paid to you for your relocation expenses will have to be repaid. Should you leave our firm prior to December 31, 2002, then it is agreed that the $10,000.00 is to be repaid.

(*Id.*, p. 6; December 29, 2000 Letter[1].)

On January 2, 2001, Plaintiff accepted Mr. Veneziano's offer to work for WW&R, in Cincinnati, Ohio. (Hutchens Affidavit, ¶ 4) Plaintiff began working in the foreclosure department. (Veneziano Depo., p. 24) WW&R asserts that while Plaintiff was in the foreclosure department, he had many problems. However, Plaintiff was never formally disciplined. (Depo. of Glenn Algie, pp. t 11-12, 14-15; Depo. Shannon Gaskamp, p. 34)

When WW&R hired Plaintiff, the intent was for him to be involved in the firm's Indiana litigation practice. (Veneziano Depo., p. 29) Thus, in March of 2002, Plaintiff transferred to the Indiana litigation department. (Veneziano Depo., p. 29; Algie Depo., p. 9) Mr. Veneziano felt, with Plaintiff's background, he would bring expertise and experience to the firm's Indiana litigation practice. (Veneziano Depo., p. 34) Despite WW&R's contentions regarding Plaintiff's deficiencies in the foreclosure department,

---

[1] The December 29, 2000 Letter is Plaintiff's Exhibit 9 from Document 21.

Glenn Algie, the attorney in charge of WW&R's litigation department, gave Plaintiff a "clean slate" upon his arrival in litigation. (Algie Depo., p. 81)

On May 14, 2002, Mr. Algie issued to Plaintiff his first formal, oral reprimand for missing work on the day before his mother's funeral without giving notice (hereinafter "May 14 reprimand"). (Algie Depo., p. 37) On August 30, 2002, Mr. Algie issued to Plaintiff a formal Employee Incident Report for "failure to perform job duties in a satisfactory manner" (hereinafter "August 30 report") (August 30, 2002 Employee Incident Report[2]) On October 11, 2002, Mr. Algie issued to Plaintiff a second formal Employee Incident Report for "failure to perform job duties," and Plaintiff was terminated from his employment at WW&R (hereinafter "October 11 report") (October 10, 2002 Employee Incident Report, Algie Depo., pp. 75-76)

In September, 2002, Eric Welch, another attorney at WW&R began working in the Indiana litigation practice. (Affidavit of Eric Welch, ¶ 4) Prior to working in litigation, Mr. Welch was in the bankruptcy practice of WW&R and, in April, 2002, decided to resign. In an attempt to prevent his resignation, Mr. Welch was promised a transfer to litigation. (Welch Affidavit, ¶ 2-3.) His transfer was delayed until September, 2002 to allow Mr. Welch time to train his replacement. (Welch Affidavit, ¶ 4)

At the time Mr. Welch was promised his transfer, neither Mr. Hutchens nor Kathy Bledsoe, the other attorney in the Indiana litigation practice, were overworked. (Algie Depo., p. 70)  At the time of Plaintiff's termination, Mr. Welch was thirty years old. (Welch Depo. at 5)

---

[2] The August 30, 2002 Employee Incident Report is Exhibit 1 of Algie Depo.

1:03cv252                                                                                        3

## II. ANALYSIS

### A. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

### B. ADEA AND O.R.C. § 4112.14 CLAIM

Defendant first moves for summary judgment on Plaintiff's age discrimination claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.* (hereinafter "ADEA") and O.R.C. § 4112.14. "In reviewing age discrimination claims under § 4101.17 [now § 4112.14], Ohio courts apply the federal evidentiary standards and guidelines applicable to claims brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (citations omitted). Therefore, if Plaintiff

demonstrates a genuine issue of material fact pertaining to the ADEA claim, he does so for the claim under O.R.C. § 4112.14 as well.

An ADEA claim may be proved by either direct or circumstantial evidence. "The direct evidence and circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Kline v. TVA*, 128 F.3d 337, 348-349 (6th Cir. 1997). The circumstantial path may be proved through the burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff must present a prima facie case of age discrimination, to which the defendant must reply with a non-discriminatory reason for its action. A plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reason was simply a pretext for discrimination. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004).

To establish a *prima facie* case of age discrimination, Plaintiff must establish:

1. he was at least forty years old at the time of the alleged discrimination;
2. he was subjected to an adverse employment action;
3. he was otherwise qualified for the position; and
4. after he was rejected, a substantially younger applicant was selected.

*Id*. In the instant case, it is undisputed Plaintiff is over the age of forty, and was subject to an adverse employment action.

Turning to whether Plaintiff was otherwise qualified for the position, "a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 574 (6th Cir. 2003). The proper inquiry is whether Plaintiff's qualifications "are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id*. at 576. Factors suggested for this inquiry by the

Sixth Circuit include "plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.*

Defendant does not assert that Plaintiff's education, experience, or skills were inadequate. In fact, Mr. Veneziano said Plaintiff's recommendations were "sparkling," and he felt Plaintiff possessed experience and expertise. Rather, Defendant asserts Plaintiff was not qualified for his position because his performance was inadequate. However, inadequate performance is Defendant's alleged non-discriminatory reason for terminating Plaintiff and, thus, cannot be considered when analyzing Plaintiff's prima facie case. As such, Plaintiff has submitted sufficient evidence to establish he was qualified for the position.

Finally, with respect to the remaining element, the timing of events and Mr. Welch's deposition testimony raise a genuine issue of fact as to whether Defendant replaced Plaintiff with a substantially younger employee. "'A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.'" *Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990))

Prior to Mr. Welch's transfer, there were two attorneys in the Indiana litigation department and, according to Mr. Algie, they were not overworked. Nonetheless, in April, 2002, Mr. Welch, was promised a transfer into the department. Within thirty days of Mr. Welch's transfer, Plaintiff was terminated and the department again had two attorneys. The timing of these events may be evidence Defendant replaced Plaintiff with Mr. Welch. Further support for Plaintiff's argument can be found in Mr. Welch's own statement that he believes he replaced Plaintiff. (Welch Depo., p. 13)

Accordingly, a reasonable jury could find that Mr. Welch, a substantially younger employee outside the protected group, was reassigned to perform Plaintiff's duties.

It is uncontested Plaintiff was at least forty years old at the time of the alleged discrimination and was subjected to an adverse employment action. Additionally, genuine issues of material fact exist as to whether Plaintiff was otherwise qualified for the position and whether he was replaced by a substantially younger employee. As such, Plaintiff can demonstrate a *prima facie* case of age discrimination.

In response to Plaintiff's *prima facie* case, Defendant asserts Plaintiff's poor performance actually motivated his discharge. As such, Plaintiff must demonstrate Defendant's proffered reason is simply a pretext for discrimination. *Hedrick*, 355 F.3d at 460. As Plaintiff failed to offer evidence to show Defendant's proffered reason has no basis in fact, Defendant argues this "only underscores" the conclusion that Defendant's proffered reason was not pretextual. However, Plaintiff may still prove his case by demonstrating ageism rather than his poor performance more likely motivated his discharge.

In *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078 (6th Cir. 1994), the Sixth Circuit concisely set forth what a plaintiff must show:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.

*Id.* at 1084 (citations omitted). Under the second type of showing, a plaintiff neither disputes the underlying factual allegations supporting the defendant's proffered reason,

nor disputes that those factual allegations *could* motivate dismissal. *Id*. Rather, "the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant." *Id*. Under this method of proof, "the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Id*.

In the instant case, the only documents addressing Plaintiff's alleged deficiencies before the Court are the May 14, August 30, and October 11 reprimands. The May 14 reprimand was issued approximately one month after Mr. Welch was promised reassignment, and it was issued for Plaintiff's failure to warn of his absence on the day before his mother's funeral. The August 30 reprimand was issued less than one month before Mr. Welch's promised reassignment was effectuated. The October 11 reprimand and termination of Plaintiff occurred less than one month after Mr. Welch's transfer.

In reviewing these circumstances *in toto*, the Court concludes a genuine issue of material fact exists as to what motivated the reprimands. A reasonable jury might find the reprimands were warranted and not motivated by any other purpose than poor job performance. As such, a reasonable jury might determine the reprimands warranted Plaintiff's dismissal and Defendant did not act with a discriminatory purpose. However, a reasonable jury might also find that this evidence demonstrates Defendant's motivation in issuing was to manufacture support for its decision to terminate Plaintiff, while in fact simply creating room for Mr. Welch, a substantially younger attorney.

Accordingly, because reasonable minds could reach differing conclusions on this evidence, construing the evidence most strongly in favor of Plaintiff, a genuine issue of material fact exists as to whether Defendant's proffered reason for terminating Plaintiff was pretextual. Therefore, Defendant's Motion for Summary Judgment on Plaintiff's ADEA and O.R.C. § 4112.14 claims is hereby **DENIED**.

### C. CONTRACT CLAIM

Defendant moves for summary judgment on Plaintiff's claim he had a two-year employment contract with Defendant. "[I]n the absence of facts and circumstances which indicate that the agreement is for a specific term, an employment contract which provides for an annual rate of compensation, but makes no provision as to the duration of the employment, is not a contract for one year, but is terminable at will by either party." *Henkel v. Educational Research Council*, 45 Ohio St. 2d 249, 251 (1976).

Plaintiff bases his contract claim on the following language from the December 29, 2000 letter, "our firm and yourself agree that as long as you remain in our employ through December 31, 2002, none of the $10,000.00 paid to you for your relocation expenses will have to be repaid." However, the discussion of December 31, 2002 appears in a paragraph devoted completely to this relocation compensation, and not related to annual salary. Moreover, the December 29, 2000 letter does not contain any provision in which Defendant promises Plaintiff any duration of employment. Plaintiff, therefore, was an at-will employee of Defendant.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's contract claim is hereby **GRANTED**.

## D. VIOLATION OF PUBLIC POLICY CLAIM

The following must be demonstrated to establish a claim for wrongful discharge in violation of public policy:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element). (Emphasis sic.)
>
> We note further that the clarity and jeopardy elements, 'both of which involve relatively pure law and policy questions,' are questions of law to be determined by the court.

*Collins v. Rizkana*, 73 Ohio St. 3d 65, 69-70 (1995) (citations omitted).

In *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240 (2002), the Ohio Supreme Court refined the jeopardy element. The *Wiles* court held a statute cannot be the basis of a wrongful discharge in violation of public policy tort claim if the "remedial scheme provides an employee with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation." *Id.* at 245. "Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." *Id.* at 244.

In addition to possible criminal penalties, the ADEA provides, "[a]ny person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or

equitable relief as will effectuate the purposes of this Act." 29 U.S.C. § 626(c)(1). The Ohio statute at issue provides, "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief." O.R.C. § 4112.99.

The statutory remedies available allow for "such legal or equitable relief as will effectuate the purposes" of Congress, and provide for "damages, injunctive relief, or any other appropriate relief." These statutory remedies are adequate to protect the public policy against ageism. Additionally, Plaintiff has not argued otherwise. As such, as established in Wiles), the jeopardy element of Plaintiff's public policy claim is not satisfied. *See also Carrasco v. Noamtc Inc.*, 124 Fed. Appx. 297 (6th Cir., 2004) (affirming dismissal of public policy claim because the remedies available under Title VII, 42 U.S.C. § 2000e, and O.R.C. § 4112, adequately protected public civil rights policy); *Jakischa v. Cent. Parcel Express*, 106 Fed. Appx. 436 (6th Cir., 2004) (holding that remedies available under O.R.C. § 4123.90 adequately protected the public policy at issue in a worker's compensation case); *Satterwhite v. Faurecia Exhaust Systems*, 2004 U.S. Dist. Lexis 10282 (S.D. Ohio 2005) (public policy claim dismissed as O.R.C. §4112 provided adequate remedy).

Accordingly, there remains no genuine issue of material fact and Defendant's Motion for Summary Judgment of Plaintiff's public policy claim is **GRANTED**.

## III. CONCLUSION

As discussed above, genuine issues of material fact exist with respect to Plaintiff's age discrimination claims. However, judgment as a matter of law is appropriate as to Plaintiff's contract and wrongful discharge violation of public policy

claims.

Accordingly, the May 27, 2004 Motion of Defendant for Summary Judgment (Doc. 19) is **GRANTED** as to Plaintiff's contract claim and wrongful discharge in violation of public policy, and is **DENIED** as to Plaintiff's age discrimination claims pursuant to the ADEA and O.R.C. § 4112.14.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**